RENDERED: OCTOBER 22, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1357-MR

ROBERT E. JAMES                                                   APPELLANT


                   APPEAL FROM BOYD CIRCUIT COURT
v.                 HONORABLE GEORGE W. DAVIS, III, JUDGE
                      ACTION NO. 13-CI-01100


KIMBERLY B. JAMES (NOW WOODS);
AND KENTUCKY FARMERS BANK                      APPELLEES


OPINION
AFFIRMING IN PART,
REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: ACREE, COMBS, AND MAZE, JUDGES.

MAZE, JUDGE: Robert E. James (Robert) appeals from post-decree orders of the

Boyd Circuit Court in matters relating to the dissolution of his marriage to

Kimberly B. James, now Kimberly Woods (Kimberly). The trial court entered

these orders as part of a sale of the parties' real property following remand from a

prior opinion of this Court. Robert first argues that the trial judge improperly denied his motion to recuse. However, he fails to direct this Court to any properly supported motion or the order denying the motion. Therefore, that issue is not properly presented on appeal.

Robert next argues that the trial court erred by holding that the sale proceeds were subject to a mortgage issued to Kimberly following entry of the decree. We conclude that the trial court acted within its jurisdiction when it allowed the mortgage holder to intervene to assert a claim to the sale proceeds. Furthermore, the trial court did not err in finding that the mortgage holder was entitled to priority in the sale proceeds. However, we further conclude that the trial court erred by failing to charge Kimberly for the deduction of a non-marital debt out of the sale proceeds. Lastly, we conclude that the trial court did not clearly err in its calculation of the other credits to which Kimberly was entitled. Hence, we affirm in part, reverse in part, and remand for a recalculation and reallocation of the sale proceeds due to Robert and Kimberly respectively.

The relevant facts of this appeal are as follows. Robert and Kimberly were married in 1987 and separated in 2013. Kimberly filed a petition for dissolution of the marriage on December 23, 2013. The disputed issues concerned custody and support of their then-minor child, and division of marital property and

debt. The trial court assigned the issues to a Domestic Relations Commissioner (DRC) for a hearing.

Following the hearing, the DRC issued a Report and Recommendation. In pertinent part, the DRC recommended that the marital residence be sold with the marital debts paid off from the proceeds and the remaining proceeds divided equally between the parties. The parties each filed objections to the report. On September 3, 2014, the trial court overruled most of the objections.

Thereafter, on September 17, 2014, the trial court entered a decree dissolving the marriage and setting out the disposition of marital property and debts. The decree incorporated the DRC's recommendation regarding the marital residence, setting out as follows:

> It is hereby ordered that the parties['] marital residence shall be sold and after a reduction for the costs associated with the sale of the house the net proceeds shall first be applied to the payment of the parties['] credit card debt and/or other marital indebtedness and the remainder if any shall be divided equally between [Kimberly] and [Robert].

Neither party sought to modify the decree or filed a notice of appeal. The parties continued to have other disputes regarding custody and visitation which are not relevant to this appeal. In addition, the parties could not reach an agreement regarding the listing and sale of the marital residence. On October 21,

2014, Robert filed a motion, which, among other things, asked the trial court to set conditions for the listing and sale of the marital residence from the judgment.

The trial court entered an order on November 12, 2014, directing Kimberly to cooperate in the preparation and the signing of a listing agreement to facilitate the offering of the marital residence for sale. On January 20, 2015, the trial court entered an amended order directing the parties as follows:

> the parties shall agree on an appraiser to value the marital residence at [Kimberly's] expense. The appraisal shall take place within ten (10) days. [Kimberly] shall then within twenty (20) days tender to [Robert] an amount equal to half of said value. If the parties are unable to agree upon an appraiser, the Court shall appoint one.

The parties eventually agreed on an appraisal of the property by Prichard Realty. Prichard Realty's report appraised the property at $39,580. Robert disputed that appraisal and the trial court resubmitted the matter to the DRC. The DRC directed the parties to submit additional appraisals, which varied from between $18,000 to $55,000.

After additional proceedings, Kimberly filed a motion asking the trial court to value the property at $28,000. She further requested that the trial court allow her to purchase Robert's share for $14,000, to allow her to present proof of her payments on the marital debt, and to deduct one-half that amount from the gross purchase price for Robert's share of the residence. In response, Robert

-4-

argued that the trial court lacked jurisdiction to amend the decree. However, he also requested that he be allowed to purchase the property.

On November 20, 2015, the court entered an order permitting Kimberly to purchase the residence for $28,000. The court directed Kimberly to pay $14,000 into escrow as consideration for Robert's share. After additional proceedings, the trial court entered an order on June 13, 2016, directing Robert to sign a quitclaim deed to convey his interest in the property to Kimberly. The order specifically noted that the quitclaim deed was necessary for Kimberly to obtain a loan to finance her purchase of the property.

Robert then appealed from this order. This Court vacated the trial court's order, concluding that it lacked jurisdiction to modify the decree in the absence of a proper motion pursuant to CR[1] 60.02. *James v. James*, No. 2016-CA-000993-MR, 2017 WL 6188409, at *2 (Ky. App. Dec. 8, 2017). This Court remanded the matter to the trial court "with instructions to enforce the decree as entered." *Id.* at *1.

While that appeal was pending, Kimberly recorded the quitclaim deed from Robert. Kimberly also obtained a mortgage from Kentucky Farmers Bank

---

[1] Kentucky Rules of Civil Procedure.

(KFB). She used some of the proceeds to pay off the marital credit cards and deposited the rest into escrow.

Following the remand from this Court, Robert filed a motion requesting the sale of the property by the Master Commissioner. Kimberly filed a motion requesting a credit of $16,942.12 for the monies paid toward the marital debt, and of $9,108.35 representing the remaining proceeds from the KFB mortgage.

To protect its interest, KFB filed a motion for leave to intervene, which was granted on October 1, 2019. KFB's intervening complaint requested a declaratory judgment that it had a valid mortgage lien and that the lien be determined to have priority over all other liens or debts. Shortly after the filing of the intervening complaint, KFB moved for summary judgment. The trial court granted KFB's motion on October 21, 2019. The court concluded that KFB properly relied upon the quitclaim deed executed by Robert. Consequently, the court found that KFB's mortgage is a lien on the property free and clear of any interest by Robert. Finally, the court directed that any order of sale be subject to KFB's mortgage. The trial court designated this order as final and appealable pursuant to CR 54.02.

Robert filed a CR 59.05 motion objecting to the inclusion of the finality language. However, he conceded that KFB's interest was valid and should

have priority in the sale proceeds. The trial court denied the motion on November 13, 2019. In a separate order entered the same day, the trial court ordered the property sold by the Master Commissioner. The order further directed the Master Commissioner to hold the proceeds of the sale pending further order of the court.

The property was sold at Master Commissioner's Sale on January 3, 2020 for a purchase price of $39,000.[2] Robert did not file any objections to the sale, but he objected to payment of KFB's attorney fees from his portion of the sale proceeds. Robert also took the position that the mortgage debt and the associated attorney fees claimed by KFB were solely Kimberly's non-marital debt.

On July 10, 2020, the trial court entered an order directing the Master Commissioner to pay out the proceeds from the sale as follows:

| | |
|---|---|
| Kentucky Farmers Bank | $20,244.77 |
| Master Commissioner Sale Fee | $1,170.00 |
| Master Commissioner Report Fee | $50.00 |
| Master Commissioner Deed Fee | $50.00 |
| Master Commissioner Expenses | $56.30 |
| C. Stone – Appraisal Fee | $150.00 |
| B. Prichard Appraisal – Appraisal Fee | $150.00 |
| Ashland Daily Independent | $642.60 |
| Kimberly Woods | $8,243.16 |
| Robert E. James | $4,125.67 |
| KFB Attorney Fee | $4,117.50 |

---

[2] The Commissioner reported that Robert Mitchell Woods was the purchaser of the property at the sale. Robert notes that Woods is Kimberly's brother, but he does not object to the sale.

Robert filed a motion to reconsider this order of distribution. He noted that the prior Court of Appeals decision directed that only the debts of the parties set out in the decree could be deducted from the sale proceeds. Contrary to his prior concession, Robert also argued that the property should be sold subject to KFB's mortgage indebtedness. For the same reasons, Robert objected to payment of KFB's attorney fees from the proceeds of the sale. Finally, Robert argued that the court improperly credited Kimberly for payment of a credit card debt which was still outstanding.

Following a hearing, the trial court denied Robert's motion to reconsider. In pertinent part, the court stated, "the issues [Robert] raised were addressed upon appeal and upon subsequent [o]rder of the [c]ourt following the Appellate Court's direction which was not appealed and is now the law of the case." Robert now appeals.

As an initial matter, Robert argues that the trial judge should have recused himself due to alleged bias and *ex parte* communication. We find no basis for questioning the impartiality of the trial judge. The asserted belief that a judge will not afford a fair and impartial trial must be based upon substantial facts as set forth in a supporting affidavit. *See Abbott, Inc. v. Guirguis*, 626 S.W.3d 475, 481 (Ky. 2021), *reh'g denied* (Jun. 17, 2021).

We find no indication that Robert filed an affidavit supporting his motion to recuse. *Id.* at 481-82 (citing KRS[3] 26A.020(1)).  In any event, Robert fails to identify either where in the record he filed the motion or the order denying his motion to recuse.  In the absence of a properly supported motion or preservation of the issue, we decline to address the issue further.

Kimberly also argues that Robert's brief fails substantially to comply with the appellate rules.  His statement of the case includes a rough chronological summary of the facts and procedural events in the trial court with citations to the trial court record.  CR 76.12(4)(c)(iv).  However, his brief fails to include any citations to legal authority pertinent to the issues presented on appeal or any references to the record showing that these issues were preserved for review.  CR 76.12(4)(c)(v).  It is not the task of an appellate court to construct arguments for parties, *Smith v. Smith*, 235 S.W.3d 1, 5 (Ky. App. 2006), or to determine how an issue is preserved for review.  *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 53 (Ky. 2003).  This Court has held that "[a]ssertions of error devoid of any controlling authority do not merit relief[,]" and so we may summarily affirm a trial court if an appellant's brief fails to comply with CR 76.12.  *Koester v. Koester*, 569

---

[3] Kentucky Revised Statutes.

S.W.3d 412, 414 (Ky. App. 2019). *See also Clark v. Workman*, 604 S.W.3d 616 (Ky. App. 2020).

Despite Robert's failure to comply with the appellate rules, we are still constrained to address several of the issues to the extent they are affected by the law of the case. Where an appellate court has passed on a legal question and remanded the case to the court below for further proceedings, the legal determinations may not be revisited on a subsequent appeal in the same case. *Inman v. Inman*, 648 S.W.2d 847, 849 (Ky. 1982). The trial court must strictly follow the mandate set out in the prior appellate decision. *Id.* In a subsequent appeal following remand, this Court's role is limited to whether the trial court properly construed and applied the mandate. *Id.*

In the prior appeal, this Court held that the trial court lacked jurisdiction to modify the provisions of the decree except under the provisions of CR 60.02. Since no such motion had been filed, this Court vacated the trial court's June 13, 2016, order with specific directions to sell the marital property and to divide the proceeds of the sale as set forth in the September 17, 2014, decree. The existence of KFB's mortgage on the property was a complicating factor in the trial court's task on remand.

Robert argues that KFB should be responsible for the mortgage and charges associated with the litigation. However, he does not argue that the trial

court abused its discretion by granting KFB's motion to intervene. *See* CR 24.01. *See also Hazel Enterprises, LLC v. Cmty. Fin. Servs. Bank*, 382 S.W.3d 65, 68 (Ky. App. 2012). We conclude that KFB's intervening complaint invoked the trial court's jurisdiction for the matters relating to the Master Commissioner's Sale. Consequently, the trial court acted within its jurisdiction when it addressed KFB's claims relating to the mortgage on the marital property.

The trial court also concluded that KFB's mortgage and litigation costs would have priority from the sale proceeds. Robert did not file a notice of appeal from these orders, which the trial court designated as final and appealable prior to the sale. Furthermore, Robert presents no legal or factual basis which would allow this Court to find these determinations to be clearly erroneous. Indeed, we agree with the trial court that KFB was entitled to rely on the recorded quitclaim deed, particularly because it had no notice of the pending appeal. Therefore, we must affirm the trial court's orders with respect to KFB's claims to the sale proceeds.

Robert next argues that the trial court failed to properly allocate the sale proceeds between him and Kimberly. In this matter, we agree. KFB's mortgage on the marital property is clearly a non-marital debt, since Kimberly encumbered the property following the entry of the decree. In so doing, Kimberly acted in reasonable reliance upon the trial court's November 20, 2015 and June 13,

2016 orders. On the other hand, Robert had no part in incurring that new debt, and he promptly appealed the trial court's order permitting Kimberly to purchase and encumber the property.

As noted above, KFB's intervening complaint properly invoked the trial court's jurisdiction to consider its claims arising from the mortgage. However, neither Robert nor Kimberly filed CR 60.02 motions to address the collateral effects of those claims on the prior adjudications in the decree. Thus, the trial court was obligated to strictly comply with the mandate of this Court's opinion to the extent possible. *Buckley v. Wilson*, 177 S.W.3d 778, 781 (Ky. 2005). In light of this Court's prior opinion, any claims between Robert and Kimberly arising after the entry of the decree were outside the scope of remand.

Therefore, we conclude that the trial court erred in its allocation of the sale proceeds after satisfaction of KFB's claims. Of course, the costs associated with the Commissioner's Sale would have been incurred had the property been sold as directed in the decree. And the decree directed that any marital debts were to be paid from the sale proceeds. As a result, the trial court properly credited Kimberly for payment of those marital debts from the mortgage proceeds.

However, the trial court must treat KFB's mortgage and the associated litigation costs as Kimberly's non-marital debt in any allocation of those proceeds. Those amounts must be deducted from Kimberly's share of the remaining sale

proceeds. Any other result would allow Kimberly to modify the decree in contravention of this Court's mandate.

On the other hand, we must emphasize that the only issue before the trial court on this remand concerns the allocation of the proceeds from the Commissioner's Sale. As we have noted, neither party has sought to re-open the decree to address the collateral effects of the mortgage. Consequently, any potential deficiency in the allocation of the proceeds is beyond the scope of the order of remand.

Finally, Robert takes issue with the trial court's calculation of the credit due to Kimberly for her payment of the marital debts from the mortgage proceeds. He contends that there was no evidence that Kimberly actually paid a CitiBank/Steelworker's credit card debt with a balance of approximately $6,900. However, he presents no evidence that the trial court's calculation of the credit due to Kimberly was clearly erroneous. Therefore, we decline to address the matter further.

Accordingly, the order of the Boyd Circuit Court is affirmed in part, reversed in part, and remanded with directions to allocate the sale proceeds between Robert and Kimberly as set forth in this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Charles L. Douglas, Jr.
Greenup, Kentucky

BRIEF FOR APPELLEE KIMBERLY
B. WOODS:

Tracy D. Frye
Russell, Kentucky

BRIEF FOR APPELLEE
KENTUCKY FARMERS BANK:

Philip Q. Ratliff
Ashland, Kentucky